[Civ. No. 7095. Fourth Dist. July 17, 1963.]

JOHN C. YRIBARNE, Plaintiff and Appellant, v. COUNTY OF SAN BERNARDINO et al., Defendants and Respondents; BUD FULLER et al., Interveners and Respondents.

Surr & Hellyer, John B. Surr and James W. Dilworth for Plaintiff and Appellant.

Luce, Forward, Hamilton & Scripps and Robert E. McGinnis as Amici Curiae on behalf of Plaintiff and Appellant.

Stanford D. Herlick, County Counsel, Margaret J. Morris, Assistant County Counsel, and Robin S. Heyer, Deputy County Counsel, for Defendants and Respondents.

Cosgrove, Cramer, Rindge & Barnum and J. D. Barnum, Jr., for Interveners and Respondents.

Helm & Budinger and Ralph B. Helm as Amici Curiae on behalf of Defendants and Respondents.

CONLEY, J.*—The plaintiff, as a taxpayer and property owner within the boundaries of the proposed district, brought suit against the County of San Bernardino and the members of its board of supervisors to restrain them from calling an election or acting further in response to a petition for the organization of the "Big Bear Municipal Water District." In his complaint the plaintiff alleges that the Municipal Water District Act of 1911, hereinafter referred to as the Act (Stats 1911, ch. 671, p. 1290, as amended; Deering's "Water—Uncodified Acts," 1962 (Pt. One) Act 5243; West's Wat. Code Ann.—App., § 20-1 et seq.) is unconstitutional and that the plaintiff would suffer irreparable injury and damage if the defendants should call the election; the points made with respect to its claimed unconstitutionality are: (1) that "[I]t authorizes the inclusion of plaintiff's properties within the proposed district without opportunity for a hearing and determination that it will be benefited thereby," and (2) that the act involves ". . . an unconstitutional delegation of the legislative power to determine the boundaries of a municipal water district to private persons of unknown identity"; plaintiff invokes the provisions of article I, section

---

*Assigned by Chairman of Judicial Council.

14, of the Constitution of the State of California and the Fourteenth Amendment to the Constitution of the United States.

The court granted a preliminary injunction, which is still in effect, but specifically stated in the order: "This Court is not at this time determining the constitutionality of the Municipal Water District Act of 1911, (Stats. 1911, p. 1290), as amended."

Permission was granted for the filing of an answer in intervention by the members of the committee of citizens which activated the preliminary moves looking to the foundation of the new district: Bud Fuller, Karl Agajanian, Fred Schnabel, John Spencer, Chester Jantzen and D. L. Miles.

Before the case came on for hearing, the defendants and interveners made an application for an order that the court determine as the first issue at the trial whether the Municipal Water District Act of 1911, as amended, is constitutional. The court quite properly acceded to the request, for the plaintiff would have no right to a recovery unless he prevailed on that issue; it is not claimed that the proponents have failed to comply with any of the preliminary procedural requirements prescribed by the Act; all that remains to be done is for the Board of Supervisors of San Bernardino County to set a date and make arrangements for the election.

Besides granting the motion to try first the issue of the constitutionality of the Act, the court permitted counsel for the plaintiff, in the guise of an offer of proof, to assure the court that if he were permitted to do so, he could adduce evidence to support all of the factual allegations of the complaint. Counsel for the defendants and interveners also made it clear that they believed that if the case were to be completely tried, the factual issues undetermined by a ruling on the constitutionality of the Act would be resolved in favor of defendants. Actually, these clashing claims as to what the proof might show on the other issues, or the ruling of the trial judge upholding an objection to receiving any evidence, are not essential to the determination of this appeal. If the ruling of the trial court that the Act is constitutional is correct, that will conclude the case.; if the Act is unconstitutional the suit will be remanded for trial on all tendered issues.

■ Over 50 years ago, the California Supreme Court in *Henshaw* v. *Foster*, 176 Cal. 507 [169 P. 82], held that the Act is constitutional. It was then under comprehensive at-

tack under both the United States and the California Constitutions, and the decision that it did not offend any provision of either Constitution was flatly adverse to the position here taken by the appellant. In the intervening lapse of time, the Supreme Court and District Courts of Appeal in numerous instances and without exception have recognized the existence and binding force of the Act, including *Marin Mun. Water Dist.* v. *Chenu,* 188 Cal. 734 [207 P. 251]; *Jacobsen* v. *Superior Court,* 192 Cal. 319 [219 P. 986, 29 A.L.R. 1399]; *Haight* v. *Marin Mun. Water Dist.,* 208 Cal. 753 [284 P. 926]; *Morrison* v. *Smith Bros., Inc.,* 211 Cal. 36 [293 P. 53]; *State of California* v. *Marin Mun. Water Dist.,* 17 Cal.2d 699 [111 P.2d 651]; *County of Marin* v. *Superior Court of Marin County,* 53 Cal.2d 633 [2 Cal.Rptr. 758, 349. P.2d 526]; *Wilson* v. *City of San Bernardino,* 186 Cal.App.2d 603 [9 Cal.Rptr. 431]; *Hidden Valley Mun. Water Dist.* v. *Calleguas Mun. Water Dist.,* 197 Cal.App.2d 411 [17 Cal. Rptr. 416]; *City of San Diego* v. *Otay Mun. Water Dist.,* 200 Cal.App.2d 672 [19 Cal.Rptr. 595]. While all of these cases do not in so many words reaffirm the constitutionality of the Act, their citation of the *Henshaw* case, *supra,* assumes that the water districts organized under the Act are constitutional and legally existing.

The holding in the *Henshaw* case is binding in all strictness upon us as an intermediate appellate court. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal. Rptr. 321, 369 P.2d 937].) And, in fact, we have held in *Wilson* v. *City of San Bernardino, supra,* 186 Cal.App.2d. 603, that the Act is constitutional.

The lapse of over 50 years since the *Henshaw* decision, the specific and comprehensive consideration of all questions of constitutionality contained in that opinion, the subsequent formation and functioning of 48 municipal water districts under its provisions, all lead to the inevitable conclusion that the Act must again be upheld. *Stare decisis* requires an affirmance of the judgment.

In *People* v. *Hayne,* 83 Cal. 111, 116 [23 P. 1, 17 Am.St. Rep. 217, 7 L.R.A. 348], in upholding the constitutionality of a statute providing for the appointment of court commissioners, the Supreme Court said:

"To reverse a construction which must of necessity have been given to these statutes before or at the time of the appointment of these commissioners, and which has been ac-

quiesced in for so long a time, and thereby produce such a result as would follow such reversal, is a thing which ought not to be done by any court, unless there is found the gravest necessity for doing it. If the question of the constitutionality of the act was even doubtful, after such a lapse of time and such a practice under the act, the doubt ought to be resolved in favor of its validity, and the case be left to rest on the doctrine of *stare decisis.*''

(See also *Kleiber* v. *City & County of San Francisco,* 18 Cal.2d 718, 725 [117 P.2d 657]; *Miller & Lux* v. *Enterprise etc. Co.,* 142 Cal. 208, 215 [75 P. 770, 100 Am.St.Rep. 115]; *City of Los Angeles* v. *Gager,* 10 Cal.App. 378, 381 [102 P. 17]; *Seale* v. *Mitchell,* 5 Cal. 401.)

We would be fully justified to stop here and affirm the judgment. However, we shall supplement the foregoing observations by a concise discussion of the constitutional questions raised by the appellant.

First, he contends that the Act is unconstitutional because there is no provision made in it for a preliminary determination by the board of supervisors as to whether the real property of the plaintiff will be benefited by its inclusion within the exterior boundaries of the proposed district.

In view of the plenitude of the power of the Legislature, restricted only by the provisions of our state and federal Constitutions, it is not to be wondered that there exists considerable variety in the forms, and methods of creation, of the districts authorized by our laws. Certain types of districts require a pre-election hearing and decision by the supervisors of a county in which the proposed district is to be located as to whether included lands will be benefited. Irrigation districts and reclamation districts are among those which so require; in such circumstances in order to comply with the basic provisions of the applicable statutes, such preliminary hearings must, of course, be held. (The Wright Act (Stats. 1887, ch. 34, p. 29); *In re Madera Irr. Dist.,* 92 Cal. 296 [28 P. 272, 675, 27 Am.St.Rep. 106, 14 L.R.A. 755]; *Fallbrook Irr. Dist.* v. *Bradley,* 164 U.S. 112 [17 S.Ct. 56, 41 L.Ed. 369]; Wat. Code, Reclamation Districts, div. 15.)

Other districts provided for by our laws are limited in function to the making of specific improvements in a given area when the mere inclusion of the land of people living within the proposed district would subject them to the levy of assessments to pay for the work to be undertaken in accordance with benefits actually received by them. This type

of organization, generally known as an assessment district, requires as an essential prerequisite to its formation a hearing on the question whether the lands included within its exterior boundaries would be benefited by the formation of the district. (For example, see The Improvement Act of 1911, Sts. & Hy. Code, div. 7; Highway Lighting District Act, Sts. & Hy. Code, div. 14; Storm Drain Maintenance District Act, Deering's "Water—Uncodified Acts," 1962 (Pt. One) Act 2208; West's Wat. Code Ann.—App., § 42-1 et seq.; Pest Abatement District, Health & Saf. Code, div. 3.)

But the Legislature has the rightful power also by general law to authorize the formation of a district such as is proposed here without any hearing preliminary to the election as to whether the land included will be benefited.

This type of district has been termed a *quasi*-municipal district. It is formed for the purpose of supplying general municipal needs, although these needs may be specific in their delineated character; the creation of this type of district is not for the purpose of making a specific and narrowly limited improvement, but is comparable to the organization of a city; whatever assessments are made are, like taxes, general in nature and based on the valuation of the several parcels of land within the district. Not only does this classification apply to municipal water districts, but to many other districts whose purposes and general powers are defined by statute pursuant to article XI, section 19, of our state Constitution.

The nature of the powers conferred upon municipal and *quasi*-municipal corporations and the territory included within such organizations are political questions to be determined in the discretion of the state, subject only to constitutional limitations; the solution of such questions rests with the Legislature.

In *Morrison* v. *Smith Bros., Inc., supra,* 211 Cal. 36, at page 44, this type of district is thus characterized by the Supreme Court:

"Thus, from 1911 to date, there has been developed a new type of public corporation, resembling in many respects municipal corporations proper, and radically different in nature from irrigation and reclamation districts. The case of *Henshaw* v. *Foster, supra* [176 Cal. 507] clearly recognized the distinction, holding that such *quasi*-municipal corpora-

tions were municipal corporations within the meaning of article XI, section 19, of the state Constitution."

This language was quoted with approval by Mr. Chief Justice Gibson in the opinion in *Metropolitan Water Dist. v. County of Riverside*, 21 Cal.2d 640, 642-643 [134 P.2d 249].

*In re Orosi Public Utility Dist.*, 196 Cal. 43 [235 P. 1004], upheld the validity of that organization under the Public Utility District Act in its original form. (Stats. 1921, ch. 560, p. 906.)[1] That act, which like its companion legislation, the Municipal District Act (Stats. 1921, ch. 218, p. 245), was closely patterned on the Municipal Water District Act, provided for the formation of public utility districts; the Supreme Court in upholding its constitutionality said (p. 56):

"It is significant that, when the legislature came to pass the act extending to the inhabitants outside of incorporated cities and towns the privileges in regard to the acquisition and use of their own public utilities that are granted by the state constitution to municipalities, it should have followed so closely the language of the constitutional amendment of 1911 in the statement of the purposes for which the districts may be created. We are convinced that it was its intention to provide for the creation of public corporations of a *quasi-municipal* character, with power to carry on the particular functions committed to them."

The court then pointed out (pp. 58-59) that the primary purpose of the statute was to form a *quasi*-municipal corporation, which in the first instance was to be self-sustaining, to pay its own way out of revenues derived from services provided, and the court says:

"These provisions clearly establish the contention that the essential purpose of the act is to form a *quasi*-municipal corporation which may acquire and operate public utilities and pay for their operation from rates to be paid by those enjoying the service. . . . It is only when the revenues of the district shall be inadequate to pay the principal or interest of any bonded debt, as it becomes due, that the board of directors must, or, when funds are needed to carry out the objects and purposes of the district which cannot be provided for out of its revenues, that the board of directors may levy a tax for such purposes (section 39). These provisions

---

[1] In 1953, the Public Utility District Act was amended (Pub.Util. Code, § 15736) to provide for a hearing relative to benefits to lands proposed to be included within a district with the right accorded to the board of supervisors to exclude lands not benefited.

make it clear that the 'primary purpose' of the act (*Miller & Lux* v. *Board of Supervisors, supra* [189 Cal. 254]) was not that of assessing upon private lands the benefits to be derived from the acquisition of public utilities.''

The court further noted (pp. 51-52) :

''The rule laid down in *Fallbrook Irr. Dist.* v. *Bradley, supra* [164 U.S. 112] which has been so constantly adhered to by this court in its application to assessment districts formed for the purpose of assessing upon private lands the benefits to accrue from the particular public improvement for the construction of which the district was formed (*Miller & Lux* v. *Board of Supervisors,* 189 Cal. 254, 267 [208 P. 304]), does not apply to every kind of public or *quasi*-public corporation. There is an obvious distinction to be drawn between an act providing for the formation of an assessment district, and which practically authorizes property owners, without notice, to place burdens on the property of others for the sole purpose of improving their own property, and an act providing for the formation of a *quasi*-municipal corporation or a municipality. (*People* v. *Ontario,* 148 Cal. 625, 632 [84 P. 205] ; *Wilcox* v. *Engebretsen,* 160 Cal. 288, 293 [116 P. 750].) That distinction, it was pointed out in the latter case, is to be made between the proceedings of a board, acting in pursuance of some delegated legislative authority in creating a political subdivision of the state, as a county or a city, a proceeding which does not directly affect private property, and proceedings which do directly charge or affect such property.''

Speaking of the districts which are not municipal in character, the opinion continues (p. 53) :

''One of the distinguishing features of such districts is that they are created for the purpose, generally, of some special local improvement, and may exercise only such powers as may be conferred by the legislature in the line of the object of their creation. They are merely special state organizations for state purposes, created to perform certain work which the policy of the state requires or permits to be done, and to which the state has given a certain degree of discretion in making the improvements contemplated. The other distinguishing feature is that the exactions which such districts may enforce in order to carry out their purposes are in the nature of assessments or taxes for local benefits, to be spread on the property in the districts in proportion to the peculiar advantage accruing to each parcel from the improve-

ment. [Citing authority.] Such an exaction is generally in the form of a special assessment, but even if it is in the form of a tax it is nevertheless an assessment for local benefits.''

Concerning legitimate objectives in the creation of municipal corporations, the court said (p. 57):

''The creation of the municipal corporations does not have for its sole object the formation of political subdivisions of the state for governmental purposes, but there is also the association of the members of the particular community for the administration of their local business and affairs in matters largely outside of the sphere of government as such. [Citations.] It is quite apparent to us that the legislature had in view such association of the people living in the outlying districts, when it enacted the statute providing for the formation of public utility districts in the unincorporated territory of the state. It thereby provided for the creation of public agencies or *quasi*-municipal corporations, the declared purpose of the act being to extend to the inhabitants of such districts, when properly organized, advantages in the use and benefit of certain utilities which they might not be able to obtain in any other way, and which, from common experience, we know tend to promote the general welfare of the people of the state. That it had the power to do so cannot be denied. While the proposed constitutional amendment was pending in 1911, this court held that there was no provision in the state constitution which either expressly or by implication forbade the acquisition, ownership, or operation of public utilities by a municipality, or which prohibited the legislature from granting a municipality the power to acquire, own, and operate them.''

The court then points out (p. 58) that it is:

''. . . now a generally accepted proposition that, while a municipality, which undertakes to supply those of its inhabitants who will pay therefor with utilities and facilities of urban life, is performing a function not governmental, but more often committed to private corporations or persons with whom it may come into competition, it is, in fact, engaging in business upon municipal capital, and for municipal purposes. (28 Cyc. 125.) Any tax, therefore, levied and collected for the purpose of supplying such municipal capital is not a tax or assessment on property directly benefited by the construction of some local improvement, but is a general tax levied just as, and for the same purpose that, any general

municipal tax is imposed for carrying on the governmental functions and utilitarian objects of duly incorporated cities or towns.''

And in elaboration of this principle, the court further states (p. 59) that:

''When the cost of any public utility to be acquired, completed, or constructed can be paid out of the revenues of the district derived from the operation of its public utilities, in addition to the other necessary expenses of the district, the board of directors must determine the cost of such utility, the method and manner of payment therefor, and submit the question of its acquisition upon such terms to the electors. If the cost cannot be met in that way, a district bonded indebtedness may be incurred in the manner provided by the act.''

Respecting the constitutional question involved in providing what shall constitute the territory involved, the opinion continues (p. 60):

''The constitution does not attempt to limit the power of the legislature in providing for the determination of the question as to what shall constitute municipal territory. Consequently, in the matter of forming cities or towns, questions as to population, extent, and character of territory to be included are matters left entirely with the legislative department. (*People* ex rel. *Russell* v. *Town of Loyalton,* 147 Cal. 774, 778 [82 P. 620].)''

In concluding that the district had been formed in accordance with the strict letter of law, the court says (pp. 60-61):

''We have been cited to no authorities which hold that the requirement as to due process of law gives a property owner an absolute right to notice and hearing before his property may be included within the limits of a municipality or a *quasi*-municipal corporation, by reason of the creation of which his property will be subjected only to the burden of a general tax for the purposes for which the district was formed, in contradistinction to a tax or assessment for some local benefit. Appellant was not, therefore, entitled to notice and opportunity to be heard on the question of benefits to his land before it could be included within the boundaries of the respondent district. The act under which it was formed directs that in the event it becomes necessary to levy a tax for carrying out the objects and purposes of the district; the board of directors may, by ordinance, provide the man-

ner and mode of assessing, and of correcting and equalizing assessments upon, the taxable property situated within the district, and may provide for the collection of delinquent taxes by actions or legal proceedings, *provided* that the provisions of such ordinance shall be conformable to general law, or it may accept the assessment for district purposes made by the county assessor (section 39). Whatever may be the method of assessment that shall be adopted, if provision be made for the correction of errors committed by the assessor, through a board of revision or equalization, with power to hear, after notice, complaints respecting the justice of the assessment, the proceeding by which the valuation is determined, though it may be followed, if the tax is not paid, by a sale of the delinquent's property, is due process of law. (*Hagar* v. *Reclamation Dist. No. 108*, 111 U.S. 701, 710 [28 L.Ed. 569, 4 S.Ct. 663, see, also, Rose's U.S. Notes] ; *Fallbrook Irr. Dist.* v. *Bradley, supra,* at p. 175; *People* v. *Town of Ontario, supra,* at p. 633.)''

*Wilson* v. *Board of Supervisors,* 154 Cal.App.2d 101, 110 [315 P.2d 748], expressly declared the constitutionality of the Municipal Utility District Act. The *Wilson* case relied on *People* v. *Town of Ontario,* 148 Cal. 625, 631 [84 P. 205], which in turn relied on *In re Madera Irr. Dist., supra,* 92 Cal. 296, 307, 318, both of which are quoted to the effect that there is no constitutional provision that intimates that this power can be conferred by the Legislature *''only on some legislative body, and not upon the electors of the locality to be affected.''* (Italics added.)

Another *quasi*-municipal district similar in form and organization, the Golden Gate Bridge and Highway District, has twice been approved as to its constitutionality by the Supreme Court. In 1923, the Bridge and Highway District Act was passed (Stats. 1923, ch. 228, p. 452) ; it provided for the acquisition, construction and operation of bridges and approaches thereto.

In *Wheatley* v. *Superior Court,* 207 Cal. 722, 726 [279 P. 989], it is said :

''We think the corporate structure under consideration here is analogous to a municipal water district, a public utility district, a municipal utility district and a metropolitan water district. The procedure for the formation and the operation of them all is strikingly similar. These various districts have been held valid as public and *quasi*-municipal corporations or districts and the statutes under which they have been formed

have been upheld in the following cases: *Henshaw* v. *Foster*, 176 Cal. 507 [169 P. 82]; *In re Orosi Public Utility Dist.*, 196 Cal. 43 [235 P. 1004]; *In re East Bay Utility Dist*, 196 Cal. 725 [239 P. 38]; *City of Pasadena* v. *Chamberlain*, 204 Cal. 653 [269 P. 630]. In *Doyle* v. *Jordan, supra* [200 Cal. 170 (252 P. 577)] the statute under which the bridge and highway district was formed was classed with the statutes involved in the cases above cited and its validity sustained upon the authority of such cases. We think this is a public and *quasi*-municipal corporation within the rule of cases cited. (*Johnson* v. *San Diego, supra* [109 Cal. 468 (42 P. 249, 30 L.R.A. 178)]."

And in the court's opinion in *Golden Gate Bridge & Highway Dist.* v. *Felt*, 214 Cal. 308, 324 [5 P.2d 585], it is said:

"It is not an assessment district, where the tax must be levied in accordance with benefits actually received by the individual taxpayer. It is, as we declared in the *Wheatley* case and as hereinbefore repeated in this opinion, a *quasi*-municipal corporation."

In 1927 the Metropolitan Water District Act (Stats. 1927, ch. 429, p. 694) was passed; it also provided for the formation of *quasi*-municipal corporations, which as to the theory of organization are essentially the same as municipal water districts. The following cases approved formation of districts pursuant thereto: *City of Pasadena* v. *Chamberlain*, 204 Cal. 653, 663 [269 P. 630]; *Metropolitan Water Dist.* v. *County of Riverside, supra*, 21 Cal.2d 640, 642.

The second major argument which the appellant advances against the judgment is that there is an unconstitutional delegation of legislative power in the Act, because it is claimed that it gives to a relatively small group of persons as proponents (1) the right to determine the boundaries of the district to be formed, and (2) as a consequence, the power to determine the roll of voters at the election for the organization of the district. Furthermore, it is argued that: "The Act contains *no standards whatever* to guide them in exercising this power." These claims of appellant are unsound.

*In re Madera Irr. Dist., supra*, 92 Cal. 296, dealt with a statutory situation in which it was urged that a petition of 50 freeholders owning lands within the proposed boundaries of a district could impose a burden upon the owners of all land within the district even though the freeholders might constitute a small minority of the electors or

even be nonresidents of the district. Of this argument the Supreme Court said (p. 320) :

"This, however, is a matter which was addressed purely to the discretion of the legislature. Whether such a petition should be made by the owners of a fixed proportion of the land, as was required in the reclamation law, or whether there should be any qualification to the petitioners, or whether there should be any limit to the expenses which they were authorized to incur for the purposes of the improvement, are questions which were solely for the consideration of the legislature."

This is a conclusive answer to appellant's assertion that *"the proponents of the district have determined who is included in the electorate."*

 The Act itself provides a sufficient standard for the proponents contrary to appellant's claim that there are *"no standards whatever* to guide them." Section 2 of the Act (Deering's "Water—Uncodified Acts," 1962 (Pt. One) Act 5243, § 2; West's Wat. Code Ann.—App., § 20-2 (territory which may be included) and section 31 of the Act as amended (Deering's "Water—Uncodified Acts," 1962 (Pt. One) Act 5243, § 31; West's Wat. Code Ann.—App., § 20-31 ("districts ... may contain lands situate in more than one county") set up basic guide lines. The proponents in the first instance draw the exterior boundaries, controlled by these two sections of the Act which permit large expanses of territory to be included; in the final analysis, it is the electors living within those proposed boundaries to whom the Legislature has committed the power to determine by their votes whether the formation of the district within such specified boundaries is acceptable.

In *People* v. *Town of Ontario, supra,* 148 Cal. 625, 628, the Supreme Court held the act for annexation of territory to incorporated towns and cities (Stats. 1889, ch. 247, p. 358) to be constitutional. It provided that ". . . upon receiving a written petition therefor containing a description of the new territory asked to be annexed to such corporation," and signed by not less than one-fifth of the qualified electors of the annexing city, the city council ". . . must, without delay, submit to the electors of such municipal corporation, and to the electors residing in the territory . . . to be annexed. . . the question whether such new territory shall be annexed. . . .''

Of these provisions the court said at page 628 of the

opinion that: "It will be observed from the foregoing that no discretionary power whatever is vested in any legislative body with regard to the boundaries of the territory proposed to be annexed."

To the argument that the Act was unconstitutional because ". . . the absolute power to finally determine the boundaries of the territory proposed to be annexed" was given to private citizens and not to any legislative body recognized by the Constitution, the court held that there was no improper delegation of power and no violation of constitutional provisions, saying (pp. 629, 630-631):

"It is expressly provided by our constitution that corporations for municipal purposes shall not be created by special laws, and that 'the legislature, by general laws, shall provide for the incorporation, organization, and classification in proportion to population, of cities and towns.' (Art. XI, § 6.) This provision necessarily includes not only the creation of new municipal corporations, but also the matter of adding new territory to an existing corporation and the exclusion of territory embraced in such a corporation from further connection therewith. . . . From the nature of things, the legislature cannot by general laws fix the boundaries of municipal corporations. It can do no more than provide the method by which boundaries can be fixed and the territory included therein impressed with the character of municipal territory. . . .

"As has already been said, the principal objection to the method here adopted is the one relative to the fixing of the precise boundaries. The fixing of the boundaries of a municipality is ordinarily held to be the exercise of legislative power, but assuming it to be such in its nature, in view of the constitutional provision relative to the creation of municipal corporations, it does not follow that the legislature may not confer the power to declare the precise boundaries upon the electors of the district to be affected. The conferring of such power is not a delegation of legislative power at all, for the legislature is expressly prohibited from defining the boundaries. It fully exercised its own legislative power by the enactment of the general law in the matter. Necessarily, for the execution of such general law, the power to define the exact boundary-lines of each particular municipality created or enlarged after the adoption of the constitution must be by such a law placed somewhere. . . . There is no constitutional provision that intimates that this power can be
:

conferred only on some legislative body, and not upon the electors of the locality to be affected, and in the absence of such a provision the question as to whether it shall be given to the one or the other is purely one of policy, upon which the determination of the legislature is conclusive. (See *In re Madera Irr. Dist.*, 92 Cal. 296, 307, 318 [28 P. 272, 675, 27 Am. St. Rep. 106].) "

The principles already discussed have led to the approval of municipal water districts, as we have seen, in the case of *Henshaw* v. *Foster, supra,* 176 Cal. 507, 513-514, and also public utility districts, municipal utility districts, metropolitan water districts and bridge and highway districts, all of which are public and *quasi*-municipal organizations.

Thus, the principal contentions of the appellant are found to run directly counter to cases which have been decided adversely to him on the very questions involved. It would be an unnecessary and indeed a somewhat invidious task to attempt to differentiate all of the distinctions, philosophical and otherwise, which plaintiff's counsel seek to import into a discussion of the cases which hold directly against them. Much of their argument might have been considered pat and arresting if made before the decision of *Henshaw* v. *Foster, supra,* 176 Cal. 507. But the arguments come 50 years too late, and it is clear that they are unavailing, particularly in this court, which is bound to follow the law as previously clearly enunciated. We therefore will not unduly lengthen this opinion by making observations on all of the minutiae of appellant's arguments. It is enough to say that the law, as determined by the courts of this state, holds directly against him.

The judgment is affirmed. Upon the going down of the remittitur the trial court is directed forthwith to order the dissolution of the preliminary injunction.

Griffin, P. J., and Brown (Gerald), J., concurred.

A petition for a rehearing was denied August 6, 1963, and appellant's petition for a hearing by the Supreme Court was denied September 11, 1963.