[Civ. No. 25627.   Second Dist., Div. Three.   Nov. 28, 1961.]

HIDDEN VALLEY MUNICIPAL WATER DISTRICT, Plaintiff and Appellant, v. CALLEGUAS MUNICIPAL WATER DISTRICT et al., Defendants and Respondents.

Robert J. North, Loeb & Loeb and Howard I. Friedman for Plaintiff and Appellant.

O'Melveny & Myers, Pierce Works and William D. Moore for Defendants and Respondents.

SHINN, P. J.—Hidden Valley and Calleguas are separate and independent water districts organized and existing under the Municipal Water District Act of 1911 (Stats. 1911, ch. 671, p. 1290, as amended; West's Wat. Code—App., §§ 20-1 et seq. [Deering's Wat. Code, Vol. 1, Act 5243]). At the time the present action was commenced there were proceedings initiated by defendant for annexation to defendant of the territory comprising plaintiff district and two other separate areas and, concurrently, annexation of the entire territory to

the Metropolitan Water District of Southern California. Not having consented to the annexation of its territory plaintiff instituted the present action to terminate the annexation proceedings, insofar as they are designed to include plaintiff's territory. Injunction was sought against further proceedings. Unless they are enjoined they will be proceeded with to conclusion. Defendant demurred generally to plaintiff's complaint. The demurrer was sustained without leave to amend. The injunction sought was denied and the action was dismissed, but the judgment as entered restrains further annexation proceedings on condition that an appeal from the judgment be promptly taken and prosecuted by plaintiff, with a reservation of the power to modify the injunction upon five days' notice.

There is but a single question on the appeal, namely, can the territory of plaintiff be annexed as contemplated without its consent? The question calls for an interpretation of section 33 reading as follows: "§ 33. The inclusion in, or annexation or addition to, a municipal water district, of the corporate area of any public corporation or public agency, shall not destroy the identity or legal existence or impair the powers of any such public corporation or public agency, notwithstanding the identity of purpose, or substantial identity of purpose, of such municipal water district. Except for formation proceedings commenced before the effective date of the amendments to this act made by the 1955 Regular Session of the Legislature, no public corporation or public agency having identity of purpose or substantial identity of purpose shall be formed partly or entirely within a municipal water district existing under this act without the consent of such municipal water district."

The first sentence of the section was enacted in 1941 (Stats. 1941, ch. 26, p. 463, § 12). The second sentence was added in 1955 (Stats. 1955, ch. 1318, p. 2401, § 9). For resolution of the controversy it is necessary to determine the sense in which the words, in the second sentence, "formation proceedings" and "formed" were used, that is to say, whether they relate to annexation proceedings, as plaintiff contends, or only to original proceedings for the creation of a district, as they were interpreted by the trial court.

Since the trial court agreed with the interpretation of section 33 contended for by defendant, we shall refer to that contention as it is found in defendant's brief, which we quote as follows: "In and of itself, the clear and concise language of Section 33 fully supports the trial court's judgment, and

refutes the arguments of Hidden Valley. The language leaves no room for any construction or interpretation which has as its object and result a material departure from the unambiguous words used by the legislature. The material language of the second sentence of Section 33 is: '. . . no public corporation or public agency having identity of purpose or substantial identity of purpose shall be formed partly or entirely within a municipal water district . . . without the consent of such municipal water district.' This sentence does not state that no public corporation shall annex any territory partly or entirely within a municipal water district. It does not state that the corporate area of a municipal water district shall not be added to another public corporation. The operative language is that '. . . no public corporation . . . shall be formed . . .,' no more—no less. If the legislature had intended the second sentence to be operative with respect to the annexation or addition of territory to an existing public corporation, it is not unreasonable to assume that it would have explicitly mentioned 'annexation' or 'addition,' just as it did in the first sentence. Indeed, the use of the words 'annexation' and 'addition' in the first sentence and the absence of the quoted words in the second sentence, compels the conclusion that the second sentence is not concerned with, and was not intended to apply to, annexations or additions."

In support of its argument defendant makes numerous references to the manner in which the words "form," "formed" and "formation" have been used, namely, in the Municipal Water District Act of 1911 (West's Wat. Code—App., §§ 20-1 et seq. [Deering's Wat. Code, vol. 1, Act 5243]), the County Water District legislation (Wat. Code, §§ 30000-31187), California Water Districts legislation (Wat. Code, § 34000 et seq.), County Waterworks District (Wat. Code, § 55000 et seq.), in legislation relating to Metropolitan Water Districts (West's Wat. Code—App., § 35-1 et seq. [Deering's Wat. Code, vol. 1, Act 9129]) and Municipal Utility Districts (Pub. Util. Code, § 11501 et seq.). Specifying numerous instances in which the words appear in the acts, it is contended that they have always been used in connection with the creation of districts. Defendant says: "Thus, it is clear that in the enabling acts which provide for the formation of public corporations similar in purpose to a municipal water district, the legislature has consistently used the word 'formed' and has consistently confined the use of that word to proceedings for the initial creation

or incorporation of these special districts. Likewise, it has consistently refrained from the use of that word with respect to annexation proceedings. In those instances where words such as 'created,' 'organized' or 'incorporated' have been used, the legislature has intended them to be synonymous with 'formed.' '' This is the thesis upon which defendant's arguments are founded.

The substance of plaintiff's argument is illustrated by the following excerpts from its opening brief: ''The thrust of the first sentence [Section 33] is to preserve the separate identity and powers of the district whose territory has been added to another district. The effect of the second sentence is to qualify the first sentence so as to prevent the taking of such territory without the consent of the district whose territory is taken.'' Reference is made to other legislation in which the continuing existence and vitality of a district whose territory has been annexed by another district is preserved (Wat. Code, § 31181 (County Water Districts); Health & Saf. Code, § 4880 (Sewer Maintenance District); Health & Saf. Code, § 6525 (Sanitation Districts); Metropolitan Water District Act, section 9.4 (West's Wat. Code—App., § 35-9.4) [Deering's Wat. Code, vol. 1, Act 9129, § 9.4]), and of this policy plaintiff says: ''This has been particularly the case in legislation dealing with water districts where increasing demands upon limited local water supplies in California have necessitated the proliferation of new and broader based agencies providing distribution of water supplies from more distant sources. The impetus for such legislation has come from the local districts themselves. As their local water supplies have become fully utilized, the districts have sought affiliation with such other districts providing water from other sources to service expanding populations and needs. In so doing, they have insisted upon preserving their continued existence and vitality for the distribution of their own traditional local water supplies. . . .

''The second sentence of Section 33 is designed to protect districts against abuses made possible by the fact that the territory of a district can be taken by another district if, at the election required for such taking, a majority of the voters in the entire area affected so desire. The abuse contemplated is the situation in which a district does not desire affiliation with another district, does not require additional and supplemental water supplies, and objects to the burdens of dual taxation and administration. In the absence of the second

sentence, such objections would not prevail against the majority of votes cast from other areas also proposed to be taken by the acquiring district. Thus, the second sentence, in effect, qualifies the consequences of the first sentence by imposing the requirement of consent of the affected district before its territory can be so taken. This consensual requirement, explicit in Section 33, conforms to the pattern of similar legislation in related fields.''

In speaking of section 33, plaintiff says: ''The manifest evil apprehended by the Legislature was the forcible imposition upon a district, over its objection, of the taking of its territory by the first district. The impact upon a district whose land is proposed to be taken over its objection is precisely the same, whether the land is taken by another district as part of its original organization and creation or is taken by way of annexation to such a district. And the policy to be served by the Legislature in enacting the second sentence of Section 33 is precisely the same in the one instance as in the other. In each case, the first district is subjected to duplicate taxation, administration and public functions. In each instance, the independence of the first district, with its tradition and history of home rule, is equally compromised. And, in each instance, the protection contemplated by the second sentence of Section 33, namely, the requirement of consent, equally remedies the apprehended evil.''

Having stated its views as to the purpose of section 33 as a whole plaintiff argues that the word ''formed'' is not a self-serving term. Plaintiff quotes from Webster's New International Dictionary, second edition, 1955, which defines ''form'' as follows: '' '1. to give form or shape to; to frame; construct; make; fashion; produce. 2. to give a particular shape to; to shape, mold or fashion into a certain state or condition; to arrange; adjust, . . .' '4. . . . to go to make up; to act as a constituent of; to be the essential or constitutive elements of; . . .' The same source defines 'formation' as '1. act of giving form or shape to anything, or of taking form; production; development; . . . 3. the manner in which a thing is formed; structure; construction.' ''

Plaintiff says that the words ''form'' and ''formed'' may have quite different meanings, depending upon the context in which they are found. As an example, plaintiff quotes from section 27 of the act [Stats. 1951, p. 202] which relates to annexation proceedings and provides that at the conclusion

of the proceedings: "The area or areas named therein shall be deemed added to, and shall *form* a part of, said municipal water district. . . ." It is said further: "It is apparent that as used in Section 27, for example, relating expressly to annexation proceedings, the word 'form' has the very meaning which we advance. In that section, the word is used in the sense of 'becoming a part of.' And it cannot be interpreted in that context to refer to original organization proceedings."

Reference is made to sections 16.1 (Improvement District) and 27.1 (Municipal Water District) which provide that upon completion of annexation proceedings the affected area "shall be deemed added to and shall form a part of" the district. Reference is also made to sections 27.2, 27.3 and (West's Wat. Code—App.) 20-2.5, subdivision (e)(2) [Deering's Wat. Code, vol. 1, Act 5243, § 2.5, subd. (e)(2)] which relate to proceedings to exclude territory and provide that upon successful completion of the proceedings the areas affected "shall be deemed excluded from and shall no longer form a part of, said municipal water district."

Of the second sentence of section 33, it is said "The context is boundary delineation; in that context, the word 'formed' must relate to the process of 'becoming a part of' . . . . And the only way for the language to be effective and meaningful is by virtue of a construction of the word 'formed' to mean 'become a part of.' In that light, the phrase 'partly or entirely within a municipal water district' becomes clear. Whenever a public agency proposes to include within its territory the territory of a municipal water district, it must secure the consent of the affected district. That requirement applies whether the public agency is in the process of initial organization or is conducting annexation proceedings. In either case, the delineation of its boundaries so that they include territory 'partly or entirely within a municipal water district' produces an identical result—one visualized by the Legislature as requiring a consensual standard."

Plaintiff further refers to the fact that in the title of the 1911 act reference is made to "incorporation, organization, powers, government, and management of municipal water districts," yet there is no reference to "formation" of such districts, and it is noted that in the first sentence of section 33 there is no reference to organization, incorporation and formation of water districts except possibly by the use of the words "inclusion in," which, at best, is but an ambiguous

reference to original incorporation proceedings. And it is further said: ''The more natural construction is that the first sentence was designed to cover annexations as well as other instances wherein the territory of one district is acquired by another, and the second sentence applies as a qualification to the same subject matter. That being the case, it must follow that the second sentence refers to all takings of territory —accomplished by annexations as well as by original organization proceedings.''

We shall not attempt an analysis and appraisal of the persuasive arguments found in the briefs of both parties, the excellence of which enhances, rather than lessens, the difficulty of a choice between the opposing theories. We have concluded that the word ''form'' should not be interpreted to mean only creation of a district by original proceedings, and that while it undoubtedly is the most appropriate word to be used with reference to original proceedings, it also should be interpreted in the present case to mean ''coming into being'' by annexation. Such application does not do violence to customary use and meaning of the word.

There is but a single purpose discoverable in section 33, as a whole, namely, the consequences of the inclusion, in whole or in part, of the territory of an existing district into another existing district, or a district to be newly created of greater area. The district that is included does not cease to exist; two organizations exist having ''identity of purpose, or substantial identity of purpose.'' But lest this condition shall be created in all cases, it is provided that the district sought to be absorbed or included may maintain separateness by refusing to give its consent. Manifestly, consent will be given or withheld in accordance with the judgment of the district sought to be included as to its self-sufficiency and capacity to meet the needs of the inhabitants of the district. If the resources of the district are adequate, no advantage will be discernible in the inclusion of the area of the district as a part of a larger area; possible disadvantages would furnish a reason for declining to give consent.

Plaintiff asks whether it is reasonable to interpret section 33 as intended to preserve the right of the existing smaller district to maintain separate existence when it is sought to be included in the original organization of a larger district, and to deny it that right when it is sought to be taken in by annexation. We do not believe defendant has satisfactorily

answered this question. And we have not found a reason for granting the existing district the right in the one case and denying it in the other.

Under the interpretation under attack by plaintiff a district which refused to consent to its inclusion in a proposed new district would have no effective right to resist inclusion. A new district could be created, excluding the territory of the existing district, and immediately thereafter inclusion of the latter, against its consent, could be accomplished by proceedings for its annexation. It is true that section 33 does not exclude such round-about procedure as clearly as it might have done, and yet we cannot see that the word "formed" should be given so narrow a meaning as to permit such devious methods. We think it would be illogical to give the word the restricted meaning contended for by defendant. It was as good a single word as could have been used to preserve the full right of a nonconsenting district. The Legislature could have undertaken to give the district sought to be included the right to object in one case and not in the other, but in our opinion such discrimination would have been unreasonable and without purpose. And any intention to preserve the right in original proceedings and deny it in annexation proceedings would have to be expressed in clear and unmistakable language; such an intention should be rejected if the language employed reasonably justifies its rejection.

The controversy does not extend beyond disagreement as to the correct interpretation of section 33. Defendant contends that there is no occasion for interpretation or for inquiry into the purpose of the legislation, which is so clearly expressed as to leave no doubt as to its meaning.

■ The cardinal rule of interpretation is stated in *Lesem* v. *Board of Retirement*, 183 Cal.App.2d 289 [6 Cal.Rptr. 608]: "In the application of statutory law, statutes are to be construed according to the intent of the Legislature. ■ If the language of the statute is plain and certain so that no doubt arises as to its meaning, a bare reading thereof is sufficient, and there is no need for construction. [■ Where two constructions are possible and interpretation becomes necessary, the court will follow the rule of finding that construction which leads to the more reasonable result. [■ The legislative purpose and policy should be promoted and in ascertaining the legislative intent, the purpose sought to be achieved and the evils to be eliminated will be considered.

The mere literal interpretation will not prevail over the apparent legislative intent. [Citations.] A statute is to be construed in such a way as to render it reasonable, fair and harmonious with its manifest purpose and in such a way as will avoid mischief or absurd consequences. [Citations]." [P. 298.]

Having reached the conclusion that it was the intention of the Legislature to preserve the right of the district sought to be included or absorbed to maintain its separate territorial existence and that the act as framed may be reasonably interpreted as appropriate to accomplish that purpose, there is no alternative to our holding that plaintiff's territory cannot be annexed in the pending proceedings without its consent.

The judgment is reversed.

Vallée, J., and Ford, J., concurred.