Filed 3/20/24; Certified for Publication 4/12/24 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MISSION SPRINGS WATER DISTRICT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DESERT WATER AGENCY et al., <br><br> Defendants and Respondents. | D081984 <br><br><br> (Super. Ct. No. PSC1600676) |

APPEAL from a judgment of the Superior Court of Riverside County, Randall D. White* and Ronald L. Johnson,** Judges. Affirmed.

Slovak, Baron, Empey, Murphy & Pinkney, Shaun M. Murphy and John O. Pinkney for Plaintiff and Appellant.

Best Best & Krieger, Piero C. Dallarda, Wendy Y. Wang and Miles B. H. Krieger for Defendant and Respondent Desert Water Agency.

Rob Bonta, Attorney General, Robert W. Byrne, Assistant Attorney General, Eric M. Katz and Noah Golden-Krasner, Deputy Attorneys General, for Defendant and Respondent California Department of Water Resources.

———————————

*Retired Judge of the Riverside Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**Retired Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Desert Water Agency (Desert Water) and Mission Springs Water District (Mission Springs) are both local agencies responsible for certain water management functions in the Coachella Valley region of Riverside County.  The agencies dispute who should be the regional groundwater sustainability agency (GSA) responsible for managing groundwater pursuant to the Sustainable Groundwater Management Act, Water Code sections 10720 to 10738 (the Act).  Specifically, Mission Springs challenges Desert Water's claim to being the exclusive GSA within its statutory boundaries, which subsume most of Mission Springs' boundaries.  It also seeks resolution of competing claims to GSA authority for an additional three-square-mile area outside of Desert Water's statutory boundaries (the Three-Square-Mile Area).

Mission Springs first argues Desert Water violated Water Code Appendix section 100-49 (section 100-49) by impairing Mission Springs' powers.  As explained below, Mission Springs has not shown Desert Water impaired its powers simply by becoming a GSA.  Even assuming it had, we conclude the Act impliedly abrogates section 100-49 to the extent the statutes conflict.  Desert Water was expressly designated the exclusive local agency to enforce the Act within its statutory boundaries, reflecting the intent of the Legislature to put Desert Water in charge of GSA powers.

Mission Springs also claims Desert Water violated Water Code section 30065 when becoming a GSA.  We find, however, Desert Water did not "form" a public corporation or public agency within Mission Springs' jurisdiction by becoming a GSA and therefore did not violate section 30065.

Next, Mission Springs contends the California Department of Water Resources (the Department) erred by posting Desert Water's notice of intent

to become a GSA because Desert Water failed to comply with the notice requirements of the Act. We find Desert Water strictly or substantially complied with all notice requirements, and thus there was no error or abuse of discretion by the Department.

Finally, Mission Springs claims the Department should resolve the overlapping claims to the Three-Square-Mile Area in favor of Mission Springs. The Act requires the agencies to resolve this dispute between themselves and provides no role for the Department. We therefore find no error or abuse of discretion.

Accordingly, we affirm the trial court's judgment denying Mission Springs' petition for writ of mandamus.

## II.

### A.

In 2014, the Legislature passed the Act to, among other things, "provide for the sustainable management of groundwater basins," "enhance local management of groundwater consistent with rights to use or store groundwater," and "provide local groundwater agencies with the authority and the technical and financial assistance necessary to sustainably manage groundwater." (§ 10720.1, subds. (a), (b), & (d).) To facilitate these goals, the Act calls for the creation of "groundwater sustainability agencies" (GSAs), providing that "any local agency or combination of local agencies overlying a groundwater basin may decide to become a [GSA] for that basin." (§ 10723, subd. (a).) The Act requires the Department to classify groundwater basins by management priority (§§ 10720.7, 10933) and mandates the creation of

3

GSAs, or a specified alternative, for medium- and high-priority basins (§ 10722.4, subd. (d)(1)).

The Act names certain local agencies that were "created by statute to manage groundwater" and are "deemed the exclusive local agencies within their respective statutory boundaries with powers to comply with" the Act. (§ 10723, subd. (c)(1).) Desert Water is one of these "exclusive local agencies." (*Id.*, subd. (c)(1)(C).)

In 2015, when Desert Water submitted its notice of intent to become a GSA, the Act included two notice provisions. The first, in former section 10723, subdivision (d) (repealed Jan. 1, 2016), provided: "A local agency or combination of local agencies that elects to be the [GSA] shall submit a notice of intent to the [D]epartment, which shall be posted pursuant to Section 10733.3. The notice of intent shall include a description of the proposed boundaries of the basin or portion of the basin that the local agency or combination of local agencies intends to manage pursuant to this part." (Stats. 2015, ch. 255, § 6.)

Separately, former section 10723.8 (amended Jan. 1, 2016) provided:

(a) Within 30 days of electing to be or forming a [GSA], the [GSA] shall inform the [D]epartment of its election or formation and its intent to undertake sustainable groundwater management. The notification shall include the following information, as applicable:

(1) The service area boundaries, the basin the agency is managing, and the other [GSAs] operating within the basin.

(2) A copy of the resolution forming the new agency.

(3) A copy of any new bylaws, ordinances, or new authorities adopted by the local agency.

(4) A list of interested parties developed pursuant to Section 10723.2 and an explanation of how their interests

4

> will be considered in the development and operation of the [GSA] and the development and implementation of the agency's sustainability plan.

This provision further stated, "90 days following the posting of the notice pursuant to this section, the [GSA] shall be presumed the exclusive [GSA] within the area of the basin the agency is managing as described in the notice, provided that no other notice was submitted." (Stats. 2015, ch. 255, § 8.) Former section 10733.3 directed that the Department "shall post all notices it receives pursuant to Section 10723 or 10723.8 on its Internet Web site within 15 days of receipt." (Stats. 2015, ch. 255, § 14.)

Effective January 1, 2016, the Legislature amended these notice provisions, eliminating section 10733.3 entirely and removing the notice requirement of prior section 10723, subdivision (d). Section 10723.8, subdivision (c), was amended to provide: "The decision to become a [GSA] shall take effect 90 days after the [D]epartment posts notice under subdivision (b) if no other local agency submits a notification under subdivision (a) of its intent to undertake groundwater management in all or a portion of the same area. If another notification is filed within the 90-day period, the decision shall not take effect unless the other notification is withdrawn or modified to eliminate any overlap in the areas proposed to be managed. The local agencies shall seek to reach agreement to allow prompt designation of a [GSA.]" Section 10723.8, subdivision (b), was amended to provide, "The [D]epartment shall post all complete notices received under this section on its Internet Web site within 15 days of receipt." (Stats. 2015, ch. 255, §§ 6, 8, & 14.)

## B.

Mission Springs and Desert Water both provide water services in the Coachella Valley, in and around Palm Springs. Mission Springs is a county

5

water district that provides retail water and wastewater services to residents in its jurisdiction.  Desert Water is an agency created by special legislative act to ensure adequate water supply in the region through natural and artificial replenishment.  (See Wat. Code, appen. 100.)  Long ago, Mission Springs agreed to be annexed into Desert Water's jurisdiction to benefit from Desert Water's groundwater replenishment and other services.  Mission Springs is now almost entirely subsumed within Desert Water's jurisdiction, although the two provide retail water services in different areas:

Fig. 1 - Map of Overlapping Jurisdictions



Fig. 2 - Map of Service Areas



In November 2015, following a public hearing and a vote by its board of directors, Desert Water filed a notice of intent to become the GSA for its statutory boundaries and the Three-Square-Mile Area which also overlies one of the basins in Desert Water's boundaries. The Department posted this notice.

Fig. 3 - Dessert Water's Proposed Map of GSA Boundaries



Mission Springs filed a notice of its intent to become a GSA on February 3, 2016, within 90 days of Desert Water's notice. Mission Springs' notice proposed GSA boundaries that significantly overlapped with those in Desert Water's notice, including areas in Desert Water's statutory boundaries and the Three-Square-Mile Area. The Department rejected Mission Springs' notice as incomplete because it sought to become a GSA for areas within Desert Water's statutory boundaries for which Desert Water is designated the exclusive GSA under section 10723, subdivision (c)(1)(C).

On September 27, 2016, Mission Springs filed an amended notice, eliminating the overlap with Desert Water's notice except for the Three-Square-Mile Area. The Department posted the amended notice, noting the overlap in the Three-Square-Mile Area.

## C.

Mission Springs filed a petition for writ of mandamus against Desert Water and the Department, seeking to invalidate Desert Water's status as a GSA on various grounds. Mission Springs seeks a court order removing its statutory boundaries, which include the Three-Square-Mile Area, from the jurisdiction of Desert Water's GSA. It further seeks an order directing the Department to reject as incomplete Desert Water's notice of election to become a GSA, to post Mission Springs' February 2016 notice of election to become a GSA, and to deem Mission Springs the exclusive GSA within its statutory boundaries. After a trial, the court held in favor of Desert Water and the Department, and denied relief to Mission Springs.

## III.

Mission Springs and Desert Water have each filed requests for judicial notice in this court. None of the information submitted by Desert Water is relevant to our disposition; thus, its July 17, 2023, request for judicial notice

9

is denied as moot.  (See, e.g., *Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569.)

We take judicial notice of several facts and one document from Mission Springs' request for judicial notice:

- Facts 1-11 and 17-22, which were noticed by the trial court;

- The documents attached to Mission Springs' request as Exhibits 1 and 3-8, which were noticed by the trial court; and

- The April 12, 2017, Letter from State Water Recourse Control Board to County of Monterey re: Request for Clarification Regarding Groundwater Sustainability Agency Formation Notices, which was submitted to the trial court and is attached to Mission Springs' request as Exhibit 13.

The remaining information submitted by Mission Springs, both in its initial and supplemental requests for judicial notice, is not relevant to our disposition.  Accordingly, Mission Springs' Motion for Judicial Notice, dated March 10, 2023, is denied in part as moot, and its supplemental request, dated August 9, 2023, is denied as moot.

## IV.

To state a cause of action for a writ of mandate under Code of Civil Procedure section 1085, the requesting party must demonstrate: "(1) a clear duty to act by the defendant; (2) a beneficial interest in the defendant's performance of that duty; (3) the defendant's ability to perform the duty; (4) the defendant's failure to perform that duty or abuse of discretion if acting; and (5) no other plain, speedy, or adequate remedy exists."  (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 915 (*Collins*).)

10

When considering a claim for mandamus relief, this court reviews the trial court's findings of fact for substantial evidence. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.) We review questions of law de novo. (*Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 700.)

V.

We must resolve four principal issues on appeal: (A) whether Desert Water violated section 100-49 by becoming a GSA; (B) whether Desert Water violated section 30065 by becoming a GSA; (C) whether the Department erred in posting Desert Water's notice of intent because Desert Water failed to comply with the requirements of the Act; and (D) whether the Department must resolve the overlapping notices relating to the Three-Square-Mile Area. For reasons explained below, we conclude Desert Water and the Department have complied with the Act and other provisions of the Water Code relied on by Mission Springs. Accordingly, Mission Springs has not established it is entitled to any of the relief sought in this action.

A.

Mission Springs alleges Desert Water violated section 100-49, part of the "principal act" that created Desert Water, by becoming a GSA. Section 100-49 states: "The inclusion in, or annexation or addition to this agency, of the corporate area of any public corporation or public agency shall not . . . impair the powers of any such public corporation or public agency[.]" According to Mission Springs, because it consented to annexation and its boundaries are now nearly co-extensive with Desert Water's, section 100-49 precludes Desert Water from becoming a GSA within its statutory boundaries. We are unpersuaded.

11

First, the Three-Square-Mile Area has not been annexed or included in Desert Water's statutory boundaries. Desert Water's exercise of authority as a GSA in this area therefore could not impair Mission Springs' powers as a function of annexation or inclusion in Desert Water's jurisdiction. Accordingly, section 100-49 is not relevant to the Three-Square-Mile Area.

Further, Mission Springs claims Desert Water's decision not to opt out of being a GSA "indisputably impairs [Mission Springs'] powers and authority" in the annexed territory. But Mission Springs only identifies hypothetical future impairment at a general level, claiming Desert Water's "authority to control extraction and other water management functions . . . impairs Mission Springs' powers" because a GSA "has the authority to direct Mission Springs to stop all extraction activities," "to direct the placement and operation of wells, and a host of other actions that directly impairs Mission Springs' authority within its service area." Mission Springs cites no authority or record evidence in support of its position. We are not required to consider points "'not supported by citation to authorities or the record.'" (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 (*Kim*).)

Moreover, Mission Springs fails to acknowledge it overlies medium-priority basins that *will* be subject to regulation under the Act. (See §§ 10720.7, 10722.4, subd. (d)(1), 10735.2.) Even if Desert Water were not the GSA, Mission Springs' groundwater extraction would likely still be "impaired" by the new rules for groundwater sustainability. (See §§ 10727, 10733.6, 10735.2.) Mission Springs' general arguments about new regulation of groundwater prove too much.

In any case, to the extent the Act and section 100-49 are inconsistent, we find the Act impliedly abrogates section 100-49. (Cf. *Protect Our Neighborhoods v. City of Palm Springs* (2022) 73 Cal.App.5th 667, 677.)

12

Although there is a "'presumption against repeals by implication,'" where "'two acts are so inconsistent that there is no possibility of concurrent operation'" or where there is "'undebatable evidence of an intent to supersede the earlier' provision," courts will find implied repeal. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1038.) When two statutes are irreconcilable, "'the later statute prevails.'" (*Briggs v. Brown* (2017) 3 Cal.5th 808, 840.)

The Legislature gave "powers to comply with" the Act to certain "exclusive local agencies," including Desert Water, and decided Desert Water should be the exclusive GSA for its "statutory boundaries," inclusive of Mission Springs. (§ 10723, subd. (c)(1).) The stated purpose of the Act is "[t]o enhance local management of groundwater" and "[t]o provide local groundwater agencies with the authority . . . necessary to sustainably manage groundwater." (§ 10720.1, subds. (b), (d).) According to Mission Springs, because the Act gives GSAs increased powers to manage groundwater, section 100-49 would mandate that Desert Water opt out of being the GSA within its statutory boundaries by carving out Mission Springs. Assuming Mission Springs is correct, we find the provisions incompatible. If section 100-49 requires Desert Water not to exercise powers the Legislature granted, it frustrates both express provisions and the stated purpose of the Act.

In arguing otherwise, Mission Springs relies on *Environmental Law Foundation v. State Water Resources Control Board* (2018) 26 Cal.App.5th 844 (*Environmental Law Foundation*). There, a party claimed the Act impliedly repealed common law public trust duties in connection with groundwater, claiming the Legislature intended to occupy the field. (*Id.* at p. 863.) The court disagreed, citing a supreme court decision holding that the

appropriative water rights system did not displace the public trust doctrine. (*Id.* at pp. 864–865, discussing *National Audubon Society v. Superior Court* (1983) 33 Cal.3d 419, 445 (*Audubon*).) To the contrary, the supreme court found the state had a duty to consider the public trust when administering the appropriative water rights system. (*Id.* at p. 865.) Comparing it to the water rights system at issue in *Audubon*, the *Environmental Law Foundation* court found the Act was not sufficiently comprehensive to occupy the field of groundwater and supplant the common law. (*Id.* at pp. 865–866.) Furthermore, the court found the two systems could live in harmony: "If the expansive and historically rooted appropriative rights system in California did not subsume or eliminate the public trust doctrine in the state, then certainly [the Act], a more narrowly tailored piece of legislation, can also accommodate the perpetuation of the public trust doctrine." (*Id.* at p. 866.)

Here, we consider whether two statutes are incompatible, not whether the Legislature intended to preempt the common law. Moreover, the court in *Environmental Law Foundation* considered the effect of the Act as a whole on a generally applicable doctrine and concluded the two were compatible. By contrast, as explained above, we find the alleged operation of section 100-49 to be incompatible with clear and specific provisions of the Act. We thus find *Environmental Law Foundation* inapposite.

Mission Springs also endeavors a textual argument, relying on a clause applicable to some local agencies, though not Desert Water. Section 10723, subdivision (c)(3) provides: "A local agency with authority to implement a basin-specific management plan pursuant to its principal act shall not exercise any authorities granted in this part in a manner inconsistent with any prohibitions or limitations in its principal act unless the governing board of the local agency makes a finding that the agency is unable to sustainably

14

manage the basin without the prohibited authority." Mission Springs reasons that, in light of this language, *only* a local agency with authority to implement a basin-specific management plan pursuant to its principal act can ever act inconsistently with its principal act when exercising authorities under the Act. Mission Springs claims because Desert Water is undisputedly not a local agency with authority to implement a basin-specific management, it cannot violate its principal act. We cannot infer that because *certain* agencies may only violate their principal acts in certain circumstances, *other* agencies must follow their principal acts even when doing so conflicts with the text or purpose of the Act.

Indeed, this carve-out arguably harms Mission Springs' position, as the Legislature permitted some agencies to contravene their principal acts if the "governing board of the local agency makes a finding that the agency is unable to sustainably manage the basin without the prohibited authority." (§ 10723, subd. (c)(3).) That is, the overriding legislative interest expressed is in the sustainable management of groundwater, not fidelity to principal acts. As we have explained, Mission Springs' interpretation would frustrate the clear intent of the Legislature.

B.

Mission Springs next claims Desert Water violated section 30065, which provides:

> The inclusion in, or annexation or addition to, a county water district, of all or any part of the corporate area of any public corporation or public agency, shall not destroy the identity or legal existence or impair the powers of any such public corporation or public agency, notwithstanding the identity of purpose, or substantial identity of purpose, of such county water district.

> No public corporation or public agency having identity of purpose or substantial identity of purpose shall be formed partly or entirely within a county water district existing under the provisions of this code without the consent of such county water district. Nothing in this section shall be construed to prohibit any city from annexing territory within a county water district without the consent of such county water district.

Mission Springs argues Desert Water "formed" a "public corporation or public agency" when it became a GSA.

An agency can either "elect[ ] to be *or* form[ ] a [GSA]." (§ 10723.8, subd. (a); italics added; see also former § 10723.8, subd. (a) [agencies can "decid[e] to become or form a groundwater sustainability agency"].) Section 10723, which lists the "exclusive local agencies," does not use the word "form." (§ 10723, subds. (a), (c)(3).) This was also the case at the time Desert Water filed its notice of election. (Former § 10723, subds. (a), (c)(3).) By contrast, section 10723.6 states: "A combination of local agencies may *form* a" GSA by using a joint powers agreement, memorandum of agreement, or other legal agreement. (§ 10723.6, subd. (a), italics added.) Although the Act is not entirely clear on this point, it appears to contemplate existing local agencies, including the "exclusive local agencies," "electing" or "deciding" to become GSAs and combinations of local agencies "forming" GSAs.

Mission Springs does not offer any arguments that would otherwise explain the use of both terms and instead suggests all GSAs necessarily "form" new agencies. We cannot adopt this interpretation, which needlessly creates surplusage. (See, e.g., *People v. Valencia* (2017) 3 Cal.5th 347, 357.) Mission Springs' interpretation is also inconsistent with the Act's definition of GSA, which "means one or more local agencies that implement the provisions of this part," and "[f]or purposes of imposing fees pursuant to Chapter 8 . . . or taking action to enforce a groundwater sustainability plan,

16

'[GSA]' also means each local agency comprising the [GSA] if the plan authorizes separate agency action." (§ 10721, subd. (j).) This definition contemplates the continued existence of local agencies that act as GSAs.

Mission Springs relies on *Hidden Valley Municipal Water District v. Calleguas Municipal Water District* (1961) 197 Cal.App.2d 411, 412–413 (*Hidden Valley*), in which one municipal water district sought to annex another to its statutory boundaries. The plaintiff, the district resisting annexation, relied on a statute similar to section 30065, providing:

> The inclusion in, or annexation or addition to, a municipal water district, of the corporate area of any public corporation or public agency, shall not destroy the identity or legal existence or impair the powers of any such public corporation or public agency, notwithstanding the identity of purpose, or substantial identity of purpose, of such municipal water district. Except for formation proceedings commenced before the effective date of the amendments to this act made by the 1955 Regular Session of the Legislature, no public corporation or public agency having identity of purpose or substantial identity of purpose shall be formed partly or entirely within a municipal water district existing under this act without the consent of such municipal water district.

(*Id.* at p. 413.) The court addressed whether, in light of this statute, "the territory of plaintiff [could] be annexed as contemplated without its consent." (*Ibid.*) The court found the only purpose of the statute was to address "the consequences of the inclusion, in whole or in part, of the territory of an existing district into another existing district, or a district to be newly created of greater area." (*Id.* at p. 418.) Considering that purpose, and while acknowledging "form" was "the most appropriate word to be used" when referring to creation of a district in the first instance, the court construed the word "form" to also "mean 'coming into being' by annexation." (*Ibid.*)

17

Mission Springs argues, based on *Hidden Valley*, Desert Water's "GSA was 'formed' when it 'came into being' and sought to include and absorb all of Mission Springs and the Three-Square-Mile area." (Italics and bolding omitted.) But *Hidden Valley* dealt with one municipal water agency seeking to annex another, a condition addressed in the first sentence of the act at issue. (*Hidden Valley, supra,* 197 Cal.App.2d at pp. 412–413.) By contrast, section 30065 first addresses annexation or addition to "a county water district," which Desert Water is not. The first clause of section 30065 is meant to preserve the rights of agencies when annexed or added to a county water district. We therefore cannot draw the same inferences warranted in *Hidden Valley* because the first clause of section 30065 does not inform the second in the manner argued by Mission Springs.

Mission Springs contends, as a matter of fact, Desert Water "formed" a new public agency, pointing to examples of Desert Water or its agents using the word "form" in connection with becoming a GSA. The trial court disagreed, finding Mission Springs "fail[ed] to demonstrate that [Desert Water's] election to serve as GSA resulted in the creation of a new public agency" and finding "it is not a new public agency." This finding is supported by substantial evidence.

The resolution adopted by Desert Water did not form a new entity by joining with any other entities and instead "elect[ed] to be" a GSA. Desert Water maintains the same corporate form and did not promulgate any "bylaws, ordinances, or other new authorities" in connection with the decision to become a GSA.

Mission Springs principally points to examples of Desert Water using the word "form" in connection with becoming a GSA. But there are also many instances in the record of Desert Water using terms inconsistent with an

18

intent to "form" a GSA, including "elect" and "become." Indeed, the title of the resolution passed by the board of directors is, "A RESOLUTION OF THE BOARD OF DIRECTORS OF DESERT WATER AGENCY **ELECTING TO BECOME** A [GSA] FOR PORTIONS OF THE INDIO/WHITEWATER SUB-BASIN, THE MISSION CREEK SUB-BASIN AND SAN GORGONIO PASS SUB-BASIN." (Bolding added.) Given the substance of Desert Water's actions and our interpretation of the statutory provisions, we are not persuaded that the intermittent use of the word "form" is probative of Mission Springs' position.

Mission Springs further claims because becoming a GSA enhanced Desert Water's powers, it necessarily "formed" a separate agency. Mission Springs fails to cite any authority for this contention. (See *Kim, supra,* 17 Cal.App.4th at p. 979.) We see no reason an agency cannot gain additional powers without forming a new agency.

In sum, because Desert Water did not "form" a new agency by becoming a GSA, it did not violate section 30065. We thus do not need to address Mission Springs' further arguments regarding this provision.

C.

Next, Mission Springs claims Desert Water violated the Act by failing to file an adequate notice of intent to become a GSA pursuant to section 10723.8, subdivision (a). The Department principally contends Desert Water did not have to comply with section 10723.8, subdivision (a), because, in 2015, the notice standard was governed by section 10723, subdivision (d). Desert Water claims because it was designated an "exclusive local agency," it did not have to file any notice and instead would automatically become a GSA unless it opted out and, alternatively, contends its notice of election complied with section 10723.8.

19

As an initial matter, it is undisputed that Desert Water complied with previous section 10723, subdivision (d). Before it was repealed, that provision stated: "A local agency . . . that elects to be the [GSA] shall submit a notice of intent to the [D]epartment, which shall be posted pursuant to Section 10733.3. The notice of intent shall include a description of the proposed boundaries of the basin or portion of the basin that the local agency or combination of local agencies intends to manage pursuant to this part." (Former § 10723, subd. (d).) Mission Springs does not dispute that this provision was satisfied by Desert Water's notice of intent.

This does not end our analysis, however. As explained above, section 10723.8 includes a notice requirement for agencies that have elected to become a GSA. Both provisions were in effect when Desert Water filed its notice in 2015. Contrary to Desert Water's and the Department's arguments, the plain language of the statutes and the legislative history of the Act reflect Desert Water had to comply with both provisions.

First, there is no language suggesting the then-section 10723, subdivision (d) notice was a substitute for the then-section 10723.8, subdivision (a) notice, or that the local agencies designated by statute as "exclusive" could bypass either notice requirement. Rather, former section 10723.8, subdivision (a), directed, "Within 30 days of electing to be or forming a [GSA], the [GSA] *shall* inform the [D]epartment of its election or formation and its intent to undertake sustainable groundwater management." (Italics added.) Former section 10723, subdivision (d) similarly provided: "A local agency . . . that elects to be the [GSA] *shall* submit a notice of intent to" the Department. (Italics added.)

Legislative history further supports that the intent was for agencies to comply with both provisions. In connection with the original bill, the Senate

20

bill analysis stated the bill would require "a local agency or combination of local agencies that is electing to be, or forming, a GSA to notify [the Department] of the intent to be a GSA and provide a notice to [the Department] that includes the proposed boundaries of the GSA," apparently referring to the notice codified in then-section 10723, subdivision (d). (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1168 (2013-2014 Reg. Sess.) as amended Aug. 29, 2014.) Separately, the analysis states the bill would, "[f]ollowing public notice, a public hearing, and final action to become a GSA, require[ ] the GSA to notify [the Department] within 30 days and include copies of pertinent documents, as specified," apparently referring to former section 10723.8, subdivision (a). (*Ibid.*)

Underscoring this understanding, in 2015, the Department informed Desert Water it would "not become a GSA until [it] compl[ied] with Water Code Section 10723.8." The resolution adopted by Desert Water similarly stated that both section 10723, subdivision (d) notice and section 10723.8 notices were required.

We therefore consider whether Desert Water's notice complied with section 10723.8, subdivision (a).

1.

Mission Springs argues Desert Water failed to comply with section 10723.8, subdivision (a), in three separate ways: (a) failing to give its retail "service area boundaries," (b) failing to address existing multi-agency groundwater management plans, and (c) failing to explain how it will consider the interests of beneficial users of water in the area. We address each claim below.

Desert Water was required to include in its notice of intent "[t]he service area boundaries, the basin the agency is managing, and the other [GSAs] operating within the basin." (Former § 10723.8, subd. (a)(1).) Desert Water's notice included both its statutory boundaries and its proposed boundaries as GSA. (See Fig. 3.) Mission Springs does not dispute that Desert Water provides "services" by managing the water supply throughout its statutory boundaries. Mission Springs nonetheless claims the notice is deficient because Desert Water did not provide its "retail" service area boundaries. (See Fig. 2.)

There is no indication that an agency must include its *retail* service areas to comply with section 10723.8. The local agencies who may serve as GSAs must have "water supply, water management, *or* land use responsibilities within a groundwater basin." (§ 10721, subd. (n), italics added.) Because an agency is eligible to become a GSA without any retail water service area at all, we are not persuaded that "service area" means retail service area. Moreover, there is no reason relevant to the Act for an agency to provide its retail service area. Any "local agencies overlying a groundwater basin may decide to become a [GSA] for that basin," and Desert Water and others were "deemed the exclusive local agencies within their respective statutory boundaries." (§ 10723, subds. (a), (c).) When informing the Department of its decision to become a GSA, the relevant question is where the agency's boundaries are relative to the basins, not where an agency provides retail water service. Mission Springs' interpolation is not supported by the text or purpose of the Act.

Mission Springs argues the notice was also deficient because Desert Water proposed to become a GSA for the Three-Square-Mile area, which is

outside of its statutory boundaries. Mission Springs grounds this argument in guidelines promulgated by the Department in October 2015 that say the Department will reject a notice as incomplete if a local agency "[d]ecid[es] to become or form a GSA for an area that is outside the service area boundary of the local agency(s) forming the GSA." The Department's 2015 guidelines "reflect[ed] the amendments made to [the Act] which . . . bec[ame] law on January 1, 2016." (Stats. 2015, ch. 255, § 8; see Cal. Const., art. IV, § 8, subd. (c)(1).) When Desert Water filed its notice, the Act did not require a "complete" notice. (Former § 10723.8.) The Department's guidelines on what rendered a notice "incomplete" are therefore not relevant to Desert Water's notice.

Furthermore, there is no apparent statutory basis for this guidance, and the Department now disavows this reading. We agree with the Department's current interpretation, which is supported by the plain language of the text. Again, the Act provides that "any local agency . . . overlying a groundwater basin may decide to become a [GSA] *for that basin*." (§ 10723, subd. (a), italics added.) It does not limit GSA formation to the service area or statutory boundaries of the agency. The notice requirements in effect in 2015 did not limit GSA formation either, requiring GSAs to include "[t]he service area boundaries, the basin the agency is managing, and the other [GSAs] operating within the basin." (Former § 10723.8, subd. (a)(1).) Former Section 10723.8, subdivision (b), provided the GSA could then become the exclusive GSA "within the area of the basin the agency is managing as described in the notice, provided that no other notice was submitted."

In the absence of textual support from the Act itself, Mission Springs points to a September 2015 email from a Department representative to a

23

Desert Water representative, stating, "Some level of legal coordination with [Mission Springs] will likely be required to include/incorporate [the Three-Square-Mile Area] to represent the GSA boundary for" Desert Water. However, that equivocal statement is premised by a disclaimer: "I am not able to comment definitively on what legal steps would need to be covered to include/incorporate [the Three-Square-Mile Area] as part of [Desert Water] agency boundary as a GSA." We do not find this email persuasive as to the meaning of the Act.

b.

Mission Springs claims Desert Water "failed to discuss how it will treat the approved and adopted multi-agency groundwater management plans already in place in the Coachella Valley Basin." But this is not information required by current or former section 10723.8, subdivision (a), and Mission Springs does not identify any other source of this purported requirement. Accordingly, Mission Springs has not shown the omission of this information rendered the notice deficient.

c.

A notice of intent must also include: "A list of interested parties developed pursuant to Section 10723.2 and an explanation of how their interests will be considered in the development and operation of the [GSA] and the development and implementation of the agency's sustainability plan." (§ 10723.8, subd. (a)(4).) As Mission Springs points out, Desert Water did not explain *how* it would consider the interests of stakeholders. Nonetheless, we conclude Desert Water substantially complied with the Act.

If a statute is directory (as opposed to mandatory), then substantial (as opposed to literal) compliance may suffice "if the purpose of the statute is satisfied." (See *Manderson-Saleh v. Regents of University of California* (2021)

24

60 Cal.App.5th 674, 703 (*Manderson-Saleh*).) Even when a statute employs "mandatory terms," "'[i]f a statutory directive does not go to "'the essence' of the particular object sought to be obtained, or the purpose to be accomplished" and a "departure from the statute will cause no injury to any person affected by it," the provision will be deemed directory.'" (*Id.* at pp. 703–704.)

The requirement to explain in the notice how a proposed GSA will consider the interests of interested parties is directory rather than mandatory. The provision is intended to ensure interested parties are on notice and their interests are considered. In view of the larger statutory scheme, these purposes are sufficiently served by Desert Water's notice, which lists interested parties by category and by name, following section 10723.2.

Importantly, independent of the notice requirement, the interests of beneficial users must be considered. Desert Water was required to, and did, hold a public hearing on becoming a GSA, permitting stakeholders, including beneficial users and other interested parties, to provide public comment. (§ 10723, subd. (b).) Indeed, at least three Mission Springs representatives attended the meeting and provided comments. In addition, GSAs have a duty to "consider the interests of all beneficial uses and users of groundwater, as well as those responsible for implementing groundwater sustainability plans." (§ 10723.2.) This requirement is included in Chapter 4 of the Act, titled "Establishing Groundwater Agencies." Thus, whether or not there is an explanation in the notice of intent, interested parties *must* have their interests considered in connection with the "development and operation of the [GSA]." (§ 10723.8, subd. (a)(4).)

25

Concerning "implementation of the agency's sustainability plan" (§ 10723.8, subd. (a)(4)), there is also a separate provision requiring GSAs to consider stakeholder interests: "Prior to initiating the development of a groundwater sustainability plan, the [GSA] shall make available to the public and the department a written statement describing the manner in which interested parties may participate in the development and implementation of the groundwater sustainability plan." (§ 10727.8 (a).) Notwithstanding section 10723.8, subdivision (a)(4), interested parties must be given notice and the opportunity to participate in a GSA's implementation of its sustainability plan.

Mission Springs does not claim Desert Water did not actually consider the interests of interested parties, only that they did not include an explanation of how they would do so in their notice. And Mission Springs has not shown that any party was prejudiced by Desert Water's omission. This is the kind of technical error that may be excused as substantial compliance. In *Manderson-Saleh*, *supra*, 60 Cal.App.5th at pp. 681, 702, for example, the court found substantial compliance with a regulation requiring certain forms to designate a pension beneficiary where the pensioner had given her employer actual notice of her intent but had not returned the required forms before she died. Similarly, Desert Water's actions, including (we must presume) compliance with other provisions of the Act, constituted substantial compliance with section 10723.8.

Finally, we note the effect of failing to file a non-compliant notice. When Desert Water filed, the only effect of posting the notice was that "90 days following the posting of the notice pursuant to this section, the [GSA] [would] be presumed the exclusive [GSA] within the area of the basin the agency is managing as described in the notice, provided that no other

26

notice was submitted." (Former § 10723.8, subd. (b).) An exclusive local agency could comply with the Act by "electing to become a [GSA] pursuant to" section 10723. (Former § 10723, subd. (c)(3).) Only in 2016 was the statute amended to provide: "The decision of a local agency or combination of agencies to become a [GSA] shall take effect as provided in Section 10723.8." (§ 10723, subd. (d).) Thus, even in the absence of a posted notice, Desert Water had "compl[ied] with" the Act by "electing to become a" GSA and filing a notice that complied with former section 10723, subdivision (d). (Former § 10723, subd. (c)(3).) Had the Department rejected Desert Water's notice, Desert Water could have re-posted and would still be deemed the exclusive GSA within its statutory boundaries. (Former § 10723.8, subd. (b); § 10723, subd. (c)(1)(C).) As to the Three-Square-Mile Area, the notices would still be deemed overlapping because Desert Water's putatively deficient notice was "*filed* within" 90 days of Mission Springs' 2016 notice. (§ 10723.8, subd. (d), italics added; § 10723.8, subd. (b).)

2.

Because Desert Water's notice substantially complied with the Act, the Department did not err by posting that notice and declining to post Mission Springs' February 2016 notice. Desert Water was authorized by statute to become the exclusive GSA for its statutory boundaries. (§ 10723, subd. (c)(1).) Mission Springs sought to become a GSA for these areas, too. Because Desert Water opted into becoming a GSA, there is no mechanism by which Mission Springs could be the GSA for areas within Desert Water's statutory boundaries unless Desert Water opted out. (§ 10723, subd. (c)(2).) Mission Springs has not shown the Department's refusal to post a notice that sought to claim areas committed by statute to Desert Water's management

27

was a "failure to perform [a] duty or [an] abuse of discretion." (*Collins, supra,* 41 Cal.App.5th at p. 915.)

In addition, Desert Water was authorized by statute to become a GSA for any basin it overlies. (§ 10723, subd. (a) ["[A]ny local agency or combination of local agencies overlying a groundwater basin may decide to become a [GSA] for that basin."]; § 10723.8, subd. (a)(1) [GSAs to provide "the boundaries of the basin or portion of the basin the agency intends to manage pursuant to this part"].) By the time Mission Springs filed its notice, in the event of overlapping notices "filed within [a] 90-day period, the decision [to become a GSA would] not take effect unless the other notification [were] withdrawn or modified to eliminate any overlap in the areas proposed to be managed." (§ 10723.8, subd. (c).) Mission Springs does not argue the Department lacked the authority to reject its first notice if Desert Water's were properly posted. Again, there is no apparent "failure to perform [a] duty or abuse of discretion." (*Collins, supra,* 41 Cal.App.5th at p. 915.)

D.

Finally, Mission Springs contends the Three-Square-Mile Area is within its statutory boundaries and not within Desert Water's, and thus Mission Springs should be the exclusive GSA for this area. But the Department has no duty to adjudicate overlapping notices, and thus there are no grounds for issuing a writ of mandamus.

If two notifications are filed within a 90-day period, the decision to become a GSA does not take effect unless one of the notices is withdrawn or amended. (§ 10723.8, subd. (c).) In that case, "*The local agencies shall seek to reach agreement* to allow prompt designation of a [GSA]." (*Ibid.*, italics added.) As Mission Springs acknowledged at oral argument, the Department is not given any role in resolving conflicting notices. Accordingly, Mission

28

Springs has not identified "a clear duty to act by the" Department and is not entitled to mandamus relief. (*Collins, supra,* 41 Cal.App.5th at p. 915.)

Mission Springs nonetheless asks us to take judicial notice of an advisory opinion letter, sent in April 2017, by the State Water Board. We will do so, as the letter was submitted to the trial court, and an advisory letter may constitute an "'official act'" of an "'executive . . . department[.]'" (See *Fisher v. County of Orange* (2022) 82 Cal.App.5th 39, 48.) However, the letter does not support Mission Springs' position. An agency requested the opinion of the Water Board with respect to its overlapping notice with another local agency's. The Water Board opined that, because the overlapping area was not within the statutory boundaries of the requesting agency, and because a GSA cannot regulate outside of its statutory boundaries, the overlap should be resolved in favor of the agency who could regulate. The Water Board's letter does not suggest that the Department is responsible for resolving disputes between overlapping claims. Moreover, the "letter offer[ed] a non-binding, advisory opinion." According to the letter itself, "It is not a declaratory decision and does not bind the State Water Board in any future determination." As it is not binding on the Water Board, the letter is also not intended to bind any other agency or the court.

We note that there appears to be a limited mechanism for resolving overlapping notices. While local cooperation is a laudable ideal, as this case demonstrates, not all agencies will be able to "reach agreement to allow prompt designation of a" GSA. This has resulted in resources that should be put toward sustainable groundwater management—an urgent need in California—being put toward litigation. We would respectfully urge the Legislature, which has thoughtfully amended the Act in recent years, to

29

consider adopting an alternative solution that would obviate years-long disputes like this one.

VI.

The judgment is affirmed.  Respondents are entitled to costs on appeal.

CASTILLO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


KELETY, J.

Filed 4/12/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MISSION SPRINGS WATER DISTRICT, <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> DESERT WATER AGENCY et al., <br><br>     Defendants and Respondents. | D081984 <br><br><br> (Super. Ct. No. PSC1600676) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed March 20, 2024 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to:  All parties